Nov. Term,
1861.

Mitchell
v.
Parkhurst.

Friday,
November 29.

---

Mitchell and Another v. Parkhurst, Administratrix of Mitchell.

*A.* died intestate, and without issue, leaving his widow, and his father and mother, surviving. His estate consisted of $334 of personal property, and real estate valued at $1,800, which had been conveyed to him by his father in consideration of natural love and affection. Two thirds of the land was sold on petition of the administratrix, to pay debts, leaving one third to the widow ; and the surplus after the payment of debts, and

$300 to the widow, was, by order of the Court, distributed, one fourth to the father and mother, and three fourths to the widow.

*Held*, that under § 7, of the act regulating the apportionment of estates, &c., (1. R. S., p. 249,) the father was entitled to the reversion of the land, subject to the rights of the widow therein; which means her ordinary right to one third of the real estate left by her deceased husband.

*Held*, also, that the overplus remaining after the payment of debts, being of the proceeds of the sale of the land, belonged to the father, because, in the absence of such a sale, he would have been entitled to the entire two thirds, as a reversioner in fee simple.

Nov. Term,.
1861.

MITCHELL
v.
PARKHURST.

Friday,
November 29.

APPEAL from the *Johnson* Common Pleas.

DAVISON, J.—The facts of this case are these: *Noah Mitchell* died in *October*, 1858, intestate, leaving *Nancy Mitchell*, now *Nancy Parkhurst*, his widow, who was duly appointed administratrix of his estate And having left no children, or their descendants, his widow and his father and mother, the said *John D.*, and *Maria Mitchell*, became his only heirs. The whole of the decedent's estate consisted of personal property, worth $334.50, and real estate valued at $1,800. The real estate was given to the decedent by his father, *John D. Mitchell*, in consideration of natural love and affection. Two thirds of it was appraised at $1,200, and sold for the payment of debts at $800, leaving one third to the widow. From the report of the administratrix, made at the *April* term, 1859, of said Court, it appears:

That there came to her hands, for the payment
    of debts, the above amounts of $334.50, and
    $800, making in all   -  -  -  -    $1,134.50
Of which there was taken by the widow, $300.00
And paid on debts against the estate,  -  719.33 $1,019.33

Leaving, for distribution to the heirs  - -   $ 115.17

Which was thus distributed by the Court: To the appellants, *John D.*, and *Maria Mitchell*, one fourth, $28.79¼, and to the widow $86.37¾. The error assigned is, that the Court, in its order of distribution, adjudged to the appellee $86.37¾, when, in point of law, "she was not entitled to any thing." The "act regulating the apportionment of estates," contains these provisions:

"SEC. 7. An estate which shall have come to the intestate by gift or by conveyance, in consideration of love and affection, shall, if the intestate die without children or their descendants, revert to the donor, if living at the intestate's death, saving to the widow or widower, however, his or her rights therein."

"SEC. 15. Every rule of descent or distribution prescribed by this act, shall be subject to the provisions made in behalf of the surviving husband or wife of the decedent."

"SEC. 17. If a husband die testate, or intestate, leaving a widow, one third of his real estate shall descend to her in fee simple, free from all demands of creditors," &c.

"SEC. 25. If a husband or wife die intestate, leaving no child, but leaving a father and mother, or either of them, then his or her property, real and personal, shall descend, three fourths to the widow or widower, and one fourth to the father and mother jointly, or to the survivor of them. *Provided*, That if the whole amount of property, real and personal, does not exceed $1000, the whole shall go to such widow or widower." 1. R. S., pp. 249, 250, 251.

It is said, in argument, that the Common Pleas, in making the distribution, based its decision upon § 25, just recited; while, on the other hand, it is insisted that the case made by the record falls within the provisions of § 7. The latter position seems to be correct, because that section is the only one in the entire enactment that relates to cases of this sort. The intestate having derived title to the real estate of which he died seized by conveyance from his father, founded upon the consideration of "natural love and affection," the father was entitled to the reversion, subject to the rights of the widow. What were her rights? The words used are, "her rights therein." These evidently mean her ordinary right to one third of the real estate left by her deceased husband, whether he has died testate or intestate. And the residue, two thirds, or the proceeds thereof, remaining after its legal application to the payment of the intestate's debts, "reverts to the donor." How then stands the case before us? The widow received one third of the real estate, and of the personalty, which amounted to $334.50, she kept $300, leaving

$34.50 of the personal estate to be applied to the payment of debts. But these debts were of the aggregate amount of $719.33, which, after deducting the $34.50 of personalty, first applicable to their payment, were reduced to $684.83. For the payment of this balance of the debts, two thirds of the real estate was sold, its proceeds amounting to $800; which, after paying the $684.83, the debts remaining unpaid, leaves an overplus of $115.17. Now, it is evident that this overplus, being of the proceeds of the sale, of right belongs to the intestate's father; because, in the absence of any such sale, he would have been entitled to the entire two thirds, as a reversioner, in fee simple. It follows, that the distribution made to the widow was erroneous, and the judgment must, therefore, be reversed.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*Williams, Overstreet,* and *Hunter,* for the appellants.

*Samuel P. Oyler,* for the appellee.